Judge Green,
delivered the following • opinion:
The object of the statute requiring mortgages to be recorded, and declaring that, if not recorded as the statute prescribes, they shall be void as to creditors and subsequent purchasers, was to prevent, by affording the means of ascertaining the existence of the incumbrance, the frauds which might otherwise be practised by the mortgagor and mortgagee, on creditors and subsequent purchasers, by concealing it. If a purchaser has actual notice otherwise, of the existence of the mortgage, he is not only not prejudiced by the failure to record it, but is himself guilty of a fraud in attempting to avail himself of the letter of the statute, to the prejudice of another who has a just claim against the property. The statute, indeed, vests in the subsequent purchaser, in that case, the legal title; yet, although the legal title of the mortgagee is divested by the subsequent conveyance, his equitable right to subject the property to the payment of the debt, remains; not only because the mortgage is good between the parties; but, even if void as a conveyance between the parties, it would still be evidence of an agreement between them, and a Court of Equity will give effect to the equity of the mortgagee, by holding the subsequent purchaser to be a trustee. Upon these principles, the Court of Chancery in England has always relieved a prior purchaser, whose deed has not been registered, against a subsequent purchaser with notice.
I had at one time great doubts, whether the principle of those decisions did not apply to the case of a lis pendens. Lord Hardwicke, in the leading case of Le Neve v. Le Neve, 3 Atk. 646, declared, that the statutes of registry in England (which, as to the matter under consideration, are the same in effect as our statute,) only vested the legal title in the subsequent purchaser, and left the case “open to all equityand, in that case, he relieved against a sub *101 sequent purchaser, upon constructive, and not actual notice, the notice being to an agent of the purchaser. A lis pendens has always been spoken of in the English Court of Chancery, as a constructive notice to all the world; as all men are bound and presumed to take notice of the proceedings of a Court of Justice. If these propositions were universally true, it would seem to follow, that a lite pendente purchaser was a purchaser with notice, and would take the property subject to the claims of the plaintiff in the suit, as the defendant held it. In all questions of fact, the existence of the matter in question may be proved by direct evidence, or by the proof of other facts, from which it may justly be inferred, that the fact in question does exist. A fact thus proved by circumstantial evidence, is taken to exist for all purposes, as if it were proved by direct evidence. I cannot, therefore, feel the force of the observation frequently thrown out in modern cases, that a notice to affect a subsequent purchaser, after an unregistered deed, must be. actual, and such as to affect his conscience, and not' constructive. A notice, proved by circumstances to exist, affects the conscience of the party as much as if proved by direct evidence. In all other cases, a purchaser of a legal estate, with notice of a subsisting equity, is bound by constructive, as well as by actual, notice; and that, because his conscience is affected, and he is guilty of a fraud. Without fraud on his part, his legal title ought to prevail. I see no reason why a difference should be made, between the case of a purchaser after an unregistered deed, and a purchaser of a legal title, subject to any other equity, as to the proof of the notice which ought to be held to bind them. This distinction between an actual and constructive notice, in the case of a purchaser after an unregistered deed, seems to have proceeded from a doubt, whether the relief given in the early cases upon that subject, had not been in opposition to the spirit and policy, as well as the letter, of the statutes of registry.
*102 The rule, as to the effect of a lis pendens, is founded upon £[ie necessity of such a rule, to give effect to the proceedings of Courts of Justice. Without it, the adminislra*-i°n °f justice might, in all cases, be frustrated by successive alienations of the property, which was the object of litigation, pending the suit, so that every judgment and decree would be rendered abortive, where the recovery of specific property was the object. This necessity is so obvious, that there was no occasion to resort to the presumption, that the purchaser really had, or by enquiry might have had, notice of the pendency of the suit, to justify the existence of the rule. In fact, it applied in cases in which there was a physical impossibility that the purchaser could know, with any possible diligence on his part, of the existence of the suit, unless all contracts were made in the office from which the writ issued, and on the last moment of the day. For, at common law, the writ was pending from the first moment of the day on which it was issued and bore teste; and a purchaser, on or after that day, held the property subject to the execution upon the judgment in that suit as the defendant would have held it, if no alienation had been made. The Court of Chancery adopted the rule, in analogy to the common law; but, relaxed, in some degree, the severity of the common law. For, no lis pendens existed until the service of the subpoena and bill filed; but, it existed from the service of the subpoena, although the bill were not filed until long after; so that a purchaser, after service of the subpoena and before the bill was filed, would, after the filing of the bill, be deemed to be a lite pendente purchaser, and as such, be bound by the proceedings in the suit, although the subpoena gave him no information as to the subject of the suit. A subpoena might be served the very day on which it was sued out, and there is an instance in the English books of a purchaser who purchased on the day that the subpoena was served, without actual notice, and who lost his purchase by force of this rule of law. This principle, however necessary, was harsh *103 in its effects upon bona fide purchasers, and was confined in its operation to the extent of the policy on which it was founded; that is, to the giving full effect to the judgment or decree which might be rendered in the suit depending at. the time of the purchase. As a proof of this, if the suit was not prosecuted with effect, as if a suit at law was discontinued, or the plaintiff suffered a non-suit, or if a suit in Chancery was dismissed for want of prosecution, or for any other cause not upon the merits, or if at law or in Chancery a suit abated; although, in all these cases, the plaintiff, or his proper representative might bring a new suit for the same cause, he must make the one who purchased pending the former suit, a party; and, in this new suit, such purchaser would not be at all affected by the pendency of the former suit, at the time of his purchase. In the case of an abatement, however, the original suit might be continued in Chancery, by revivor, or at law, in real actions, abated by the death of a party, b j journies accounts, and the purchaser still bo bound by the final judgment or decree. If a suit be brought against the heir, upon the obligation of Ms ancestor binding Ms heirs, and he alienates the land descended, pending the writ, upon a judgment in that suit, the lands in the hands of the purchaser would be liable to be extended, in satisfaction of the debt. But, if that suit were discontinued, abated, or the plaintiff suffered a non-suit, in a new action for the same cause, the purchaser would not be affected by the pendency, of the former suit at the time of his purchase; and, if he could be reached at law, in equity it could only be, upon proof of actual notice and fraud. If a lis pendens was notice then, as a notice at or before the purchase would, in other eases, bind the purchaser in any suit in equity, prosecuted at any time thereafter, to assert the right of which he had notice, would bind the purchaser, so ought the lis pendens to bind him in any subsequent suit prosecuted for the same cause; but it does not. Again; a bill of discovery, or to perpetuate the testimony of witnesses, ought, *104 if all persons were bound to take notice of what is going on jn a Q0urt of Justice, to be a notice to all the world, as much as a bill for relief. But, these are decided to be no no^ce any purpose; a proof that the rule, as to the effect of a lis pendens, is one of mere policy, confined in its operation strictly to the purposes for which it was adopted; that is, to give effect to the judgments and decrees of Courts of Justice, and that it is not properly a notice to any purpose whatsoever. The English Judges and elementary writers have carelessly called it a notice, because, in one single case, that of a suit prosecuted to decree or judgment, it had the sanie effect upon the interests of the purchaser, as a notice had, though for a different reason. But, the Courts have not, in any case, given it the real force and effect of a notice.
I think that the statute over-rules this principle of law, in the case of a life pendente purchaser, after an unrecorded mortgage. The decisions in the cases of notice, are according to the policy and spirit of the statutes; since, in those cases, the purchaser has the very benefit which the law intended to provide for him, and he is chargeable with mala fides, in attempting to acquire that to which he knows another has a just right. He cannot complain, that the mortgagee has done him an injury by his default in failing to record his mortgage, as the law requires. But, if the purchaser were held to be affected by the pendency of a suit, if he had not actual notice, he would suffer an injury by the default of the mortgagee, unless it were held to be his duty to enquire if any suit were depending, when he had no reason to suspect that there was. any defect in the title. I think, that to require him to look to any other source of information than that which the statute has provided for him, would be contrary to the spirit and policy, and letter of the statute.
It follows, that the decree is emmeous, as it respects the 151 acres conveyed to the appellant in September, 1797; but, as to the 513 acres, which the appellant states *105 in his answer that he purchased in 1800, he is not protected by the statute. He admits, that he came into the possession pendente lile. He does not deny notice of the mortgage, if that fact be material, upon the pleadings in this cause; and ho does not shew that he was a purchaser, and that a conveyance was made to him. As to this, then, the decree ought to be affirmed, unless the other objections made at the bar ought to prevail. These are, that the suit was not so instituted as to attach on Morehouse’s title under the mortgage,. he not being a party, and there being no evidence that his title was in the plaintiff in that suit; that a Court of Equity has no jurisdiction, as the plaintiff, if he has a right, has a legal remedy; that the deed under which the plaintiff claims, passed no title, as the property was then in the adverse possession of another; and, that the rents and profits should be ascertained by a jury, and not by a commissioner.
If the rule be, that a purchaser, pending the suit, is bound by the decree in the suit as the defendant is bound, then it is too late now to urge the first of these objections. It might, possibly, have been urged by Armisiead, whilst the suit was depending. But, failing to do so, he was bound by the decree, whether it were right or wrong. I think, however, that the objection could not have been relied on with effect, in the original suit. The power of attorney, by authorising the attorney to dispose of the mortgage, for and in the name of Morehouse, authorised him to convey the legal title, and that was the effect of the deed to Simms. The power of attorney being attested by only two witnesses, was not, for that cause, defective. The law does not require any particular form, as to the attestation of a power of attorney to convey land: as, between the parties, such a power may be proved by any evidence, which would be sufficient to prove any other fact in a Court of Justice. A Court of Equity always has jurisdiction to carry into effect its own decrees. In this ease, a bill for that purpose was necessary; as well, because *106 another party, not appearing as a party on the record, had become interested, as on account of the death of Simms. The decree had never been executed. If there had been n0 c^anSe interest, and Simms had lived, the decree might have been executed, and Simms let into possession by the ordinary proceedings in the Court for that purpose. After the decree was so executed, if Simms, or his assignee, had been ousted or disturbed, he or his assignee would have been bound to proceed at law. The Court of Chancery was not functus officio, until the decree was executed by the delivery of possession.
I do not think, that Armistead could hold a-possession adverse to Morehouse or his assignee, and consequently the conveyances of Morehouse and Simms passed the title they professed to pass, unless the sale to Newman varied the case; but, that sale being made pending the suit, Newmftn could no more hold an adversary possession, unless he had taken a conveyance without notice, ■ than Armistead himself could. Armistead was a tenant at will, and so was Newman, standing in his place.
The account of rents and profits might as well be taken by a commissioner, as ascertained by a jury; and the former is the most usual course.*
Judge Coalter.
I am of opinion, that the Chancellor erred in his decree, in directing the appellant to deliver possession of the tract of 151 acres, conveyed by William *107 ,:lr mis lead to him, on the 11th of September, 1797, by the deed of lease and release in the record, of that date.
The bill claims to set up a mortgage, executed by the aforesaid William Jlr mislead, of anterior date to the above conveyance; but which was never recorded, purely on the ground, that at the time of the purchase by the appellant, there was a suit pending to foreclose the mortgage.
If the act of Assembly in regard to mortgages not re- ‘ corded, and which was in force at the time this bill was filed, is to bo construed in connection with the previous clause in relation to other conveyances, so as to transpose the words from the one to the other, in relation to notice, and thus to make the law precisely what it now is, under the act of 1819; let us enquire how the appellee would have stood in a Court of Law, on a special verdict, finding simply the mortgage and subsequent conveyance, and a suit pending to foreclose the mortgage at the time of the conveyance ?
The case for him would rest on an unrecorded mortgage against a subsequent conveyance, and which is expressly declared by the act to be void as to such subsequent purchaser, not having notice thereof. What sort of notice ? Undoubtedly, such as would affect the conscience of the purchaser; otherwise, the act would be no safeguard to the innocent, as it was intended to be. A mere lis pen-dens is not such notice as that. This has been decided, as will be seen in a case mentioned in a note to the case of Le Neve v. Le Neve; and, also, as I am told, in a late case which I have not examined, reported in 19 Vesey. A Court of Law could not substitute any other kind of notice for that contemplated by the act. But, if the party has ground for coming into equity, that Court, too, I presume, must follow the law.
But if, previous to the act of 1819, the mortgagee of an unrecorded mortgage stood, as against a subsequent purchaser, as he did in England under the registry acts, (and I incline to think he did,) then his only remedy was in. *108 equity; and there he can only prevail on the ground of frauc[} or such notice as would affect the conscience of the purchaser, and which was, therefore, considered a fraud; and it has been decided as aforesaid, and, I think, correctly, that a mere lis pendens did not affect the conscience.
Suppose, in this case, the appellant had not denied notice, no charge of notice being in the bill, but had simply answered, that he had purchased for value, and got his deed, exhibiting it with his answer, and had demurred to the residue of the bill. Could the appellee have succeeded ? I apprehend not. Or, would not such an answer have been a full response to the bill, no fraud or notice being charged, and sufficient of itself to defeat the claim of the appellee ? Iam much inclined to think it would; and, therefore, had the appellant exhibited a deed from William Jirmistcad to John B. Jlrmistead, and from the latter to him for the 513 acres mentioned in the argument, although there is no denial of notice as to it, I should, as at present advised, have thought that the appellee could not have recovered that tract, without amending his bill, and putting the fact of notice or fraud in issue; so as to give the appellant an opportunity of answering thereto. It is, however, not necessary to decide this point, because the appellant does not shew himself to be a subsequent purchaser nf that tract, and it is only against such that the mortgage is void.
Whether, as this is an interlocutory decree, he may hereafter be permitted to file those documents, if they exist, is not for me to know or anticipate. On the record, now before the Court, the decree must be reversed as to the 151 acres, and affirmed as to the residue.
Judge Bkooke, concurred: and a decree was entered conformable to the foregoing principles. *

 The following were the eases referred to by Judge Gheeit, in the course of his opinion: Durbaine v. Knight, 1 Vern. 318; Preston v. Tubbin, Ibid. 286; 15 Vin. Abr. 128, pl. 2; Birch v. Wade, Ves. & Beam. 200; Murray v. Ballow, 1 Johns. Ch. Cas.; Littleberry’s Case, 5 Rep. 476; Cro. James, 340; 2 Eq. Ca. Abr. 482; Ib. 685; 3 Ves. 485; 1 Eq. Ca. Abr. 358; Bennet v. Batchelor, 1 Ves. jun. 64; Habergham v. Vincent, Ibid, 68; 3 Atk. 243; Shannon v. Bradstreet, 1 Sch. and Lefr. 66; Brace v. Duchess of Marlborough, 2 P. W. 491; 2 Vent. 337; Brotherton v. Hatt, 3 Vern. 574 ; 2 Eq. Ca. Abr. 594; Bac. Abr. tit. Fraud, letter C; Gooch’s Case, 5 Co. Rep. 80. 1 Fonb. Eq. 279; Curtis v. Perry, 6 Ves. 745; Davis v. Earl of Strathmore, 16 Ves, 419; Wyatt v. Barnett, 19 Ves. 439.

 Judge Cabell, absent from indisposition.